OSTERHAUS, J.,
concurring in affirmance.
I vote to affirm Ms. Woods’ sentence because § 775.082(10), Florida Statutes, does not have an Apprendi-related, Sixth Amendment problem. Apprendi prohibits judicial findings that increase a criminal penalty beyond the maximum authorized by a jury’s verdict. Here, § 775.082(10) does not allow courts to increase the punishment, but only affects the form of a defendant’s penalty, whether it will include prison time or not. The maximum sentence for Ms. Woods’ third-degree felony was five years whether she received prison or not. And her eighteen-month prison sentence, after the jury found her guilty of a third-degree felony, did not violate Ap-prendi because it was within the standard statutory range, well below the maximum sentence. Another reason § 775.082(10) doesn’t violate Apprendi is that the fact-finding it assigns to judges at sentencing fully comports with their historic role. See Oregon v. Ice, 555 U.S. 160, 170, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). Courts, and not juries, have traditionally considered offender-specific, public safety factors at sentencing. And the Sixth Amendment doesn’t require such well-established judi *813 cial sentencing functions to be delivered over to juries. lee counsels that applying Apprendi in this case would violate federalism principles, Florida’s right to manage its own criminal justice system, and strong state public safety interests.[7]
I.
After a jury finds a person guilty of a third-degree, non-forcible felony in Florida (or they plead guilty), § 775.082(10) requires the calculation of a sentencing score for use in determining whether an offender will receive a prison sanction or nonprison sanction. The maximum sentence, as with all third-degree felonies, is five years in state prison. § 775.082(3)(e), Fla. Stat. The sentencing score is largely determined by whether an offender has committed other serious crimes or has a serious criminal history (a third-degree, nonforcible felony scores few points by itself). See § 921.0024, Fla. Stat. (addressing the sentencing scoresheet). If an offender has committed additional or past serious crimes, he or she may receive a high score for purposes of § 775.082(10)—more than 22 points— which makes him or her eligible for. a prison sanction based on the score alone (the judge retains sentencing discretion to give a non-prison sanction). But if an offender has a lesser criminal history and additional offenses, then his or her low score will not immediately qualify for a prison sentence. See, e.g., Porter v. State, 110 So.3d 962, 963 (Fla. 4th DCA 2013) (scoring a total of 14.7 points for eleven theft-related crimes). The statute presumptively directs judges to sentence these low-scoring offenders to a nonprison sanction (jail, community control, probation, etc.) unless “a nonstate prison sanction could present a danger to the public.” § 775.082(10), Fla. Stat.
In Ms. Woods’ case, she pled guilty to a third-degree felony with a statutory maximum punishment of five years in prison. At her sentencing hearing two weeks later, her criminal history revealed a persistent penchant .for stealing things. She had multiple thefts and a burglary on her record. And previous nonprison sanctions had not reformed her criminal behavior. The court made two main findings. First, it approved a scoresheet totaling Ms. Woods’ sentence points. She scored 8.3 sentence points, far *814 below the 22-point, score-based threshold for a prison sentence. Second, the trial court found that Ms. Woods’ criminal history, combined with the failure of previous nonprison sanctions, required a prison sentence: “To date, the criminal justice system ha[d] failed to protect the public.” The judge sentenced Ms. Woods to eighteen months in prison under § 775.082(10), instead of giving her another (ineffectual) nonprison sanction. Cf. McCloud v. State, 55 So.3d 643, 644 (Fla. 5th DCA 2011) (upholding a prison sentence for a defendant who “may not be a physically violent offender, [but] is apparently willing to steal anything and everything”).
II.
Ms. Woods now claims that her sentence violates the Sixth Amendment and the Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), line of cases, because only juries can make the “danger to the public” finding required by § 775.082(10) before a prison sanction is given. I disagree. Apprendi doesn’t apply here for two reasons: because § 775.082(10) doesn’t increase the maximum penalty, and because § 775.082(10) involves a traditional judicial sentencing decision that doesn’t impinge upon juries.[8]
A.
In Apprendi, the defendant pled guilty to a weapons offense punishable by five to ten years’ imprisonment. After the trial court accepted the plea, the State moved to increase the imprisonment term above the statutory maximum based on a “hate crime” statute. The trial court agreed that the defendant had committed the crime with racial animus and essentially doubled the defendant’s maximum sentence. Ap-prendi ultimately reached the United States Supreme Court, which decided that due process and the Sixth Amendment entitled the defendant to a jury determination on the sentencing enhancement. The Court held that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. Later, in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Court clarified that the statutory maximum “is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.” Id. at 303-04, 124 S.Ct. 2531. *815 The Court focused closely on the jury’s verdict. The “judge’s authority to sentence derives wholly from the jury’s verdict. Without that restriction, the jury would not exercise the control that the Framers intended.” Id. at 306, 124 S.Ct. 2531.
In deciding these cases, the Court did not altogether forbid judicial fact-finding at sentencing. Rather, it left trial courts free to make offender-specific findings in deciding the form of punishment (type and length of a sentence) within the statutory range of the crime proven to the jury:
[Njothing ... suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case. See, e.g., Williams v. New York, [337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)].
Apprendi, 530 U.S. at 481, 120 S.Ct. 2348. As long as the court operates within the limits of punishment provided by statute, not increasing the maximum punishment, it is considered to have properly exercised sentencing authority. Id. at 482-83, 120 S.Ct. 2348; see also Alleyne v. United States, — U.S. —, 133 S.Ct. 2151, 2158, 186 L.Ed.2d 314 (2013) (“The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt is whether the fact constitutes an ‘element’ or ‘ingredient’ of the charged offense. ... [A] fact is by definition an element of the offense and must be submitted to the jury if it increases the punishment above what is otherwise legally prescribed.”).
B.
The first reason Apprendi doesn’t apply here is because § 775.082(10) does not increase the five-year maximum penalty authorized by the jury’s verdict (or guilty plea) for third-degree felonies. Rather, the statute guides the within-the-range sentencing choices that courts must make between. different forms of punishment authorized by the jury’s verdict—third-degree felonies may be punished by either prison or nonprison sanctions, or both. In stating Apprendi’s rule, the United States Supreme Court has “never distinguished one form of punishment from another. Instead, [its] decisions broadly prohibit judicial fact-finding that increases maximum criminal ‘sentencefe],’ ‘penalties,’ or ‘punishment[s].’ ” Southern Union Co. v. United States, 567 U.S. 343, 132 S.Ct. 2344, 2351, 183 L.Ed.2d 318 (2012). With § 775.082(10), irrespective of whether a defendant receives a nonprison or prison sanction, the maximum penalty renjains static at five years. In this case, Ms. Woods received an eighteen-month prison sanction. Her sentence not only fell within the five-year statutory maximum, but was a less punitive sanction than alternative nonprison sanctions available to the sentencing court (a penalty she would still be serving now). Ms. Woods’ prison sentence was not a greater punishment than if, for instance, she’d received the maximum nonprison sanction—364 days incarcerated in county jail followed by four years of some combination of community control or probation, with attendant house arrest restrictions, having to provide an hourly accounting of her whereabouts, and having to participate in treatment or other special programs ordered by the trial court (along with the prospect of re-incarceration for any violation over this four years). Cf. Blair v. State, 667 So.2d 834, 842 (Fla. 4th DOA 1996) (affirming a 3.5-year prison sentence followed by an 11.5-year probation sentence in a case involving a 15-year statutory maximum, where *816 the sentencing guideline range called for “any nonstate prison sanction or community control or 1-8,5 years incarceration”); Holloway v. State, 668 So.2d 627, 628 (Fla. 5th DCA 1996) (noting that “only the incarcerative portion of a split sentence must fall within the sentencing guideline range”); Brown v. State, 647 So.2d 197, 198 (Fla. 1st DCA 1994) (same). Section 775.082(10) thus did not increase Ms. Woods’ punishment even if Florida law required the trial court to make an extra finding before allowing her to fill one of its prison beds. Because Ap-prendi permits judicial fact-finding that informs decisions between alternative, within-the-range sentences, Ms. Woods’ sentence should be affirmed and her facial challenge to § 775.082(10) must fail. See Cashatt, 873 So.2d at 434 (noting that with a facial challenge “the challenger must establish that no set of circumstances exists under which the statute would be valid”).
My colleagues who see an Apprendi-Blakely problem here view the statutory maximum in § 775.082(10) differently based on a single fact calculated at sentencing—the scoresheet score. Based on the judge’s score finding, my colleagues define-down the maximum penalty to one year, which is different from the five-year maximum authorized by Ms. Woods’ guilty plea. Their view conflicts with the definition of “maximum sentence” established in Blakely. Blakely said that a statutory maximum “is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.” 542 U.S. at 303-04, 124 S.Ct. 2531 (emphasis added). In other words, Apprendi and Blakely instruct us not to redefine statutory máxi-mums based upon facts found at sentencing, like the scoresheet score here.
In addition to using sentencing facts to define down the statutory maximum for some third-degree felonies, my colleagues’ analysis gives inordinate weight to the scoresheet score, which is only one of the sentencing facts referred to in the statute. The scoresheet score finding shouldn’t be singled out and favored to the exclusion of other sentencing facts cited in the statute. Reading § 775.082(10) as an integrated whole, it calls for nonprison sanctions for some offenders only if the defendant’s situation meets the scoresheet score threshold and satisfies public danger concerns. My colleagues’ severability argument concedes that the public danger finding is integral to the statute. If the public danger factor is crucial to the statute and explicitly contemplates prison sanctions, then I don’t think it proper to downwardly re-define the statutory maximum sentence as if prison sanctions were eliminated from the picture.
In sum, § 775.082(10) only affects the routine choice that sentencing judges must make between alternative jury-authorized punishments, whether to give one form or punishment or another. The statute does not authorize courts to sentence above the five-year statutory maximum applicable to third-degree felonies. For this reason, we should join those courts that have not extended Apprendi’s rule to statutes like this one. See Porter, 110 So.3d at 963 (denying a Blakely-based challenge to § 775.082(10)); State v. Anderson, 867 N.W.2d 718 (S.D. 2015) (holding that Ap-prendi doesn’t extend to a presumptive probation statute that allows the trial court to impose a prison term upon finding predicate facts); State v. Carr, 274 Kan. 442, 53 P.3d 843, 850 (2002) (“Apprendi [is] inapplicable to a sentencing judge’s decision to impose a dispositional departure prison sentence rather than to grant probation.”); People v. Crawford, 356 Ill.Dec. 351, 961 N.E.2d 447 (2nd District Ill. 2011) *817 (imposition of five year prison term instead of probation based upon judicial fact-finding didn’t violate Apprendi).
C.
The second reason Apprendi does not apply in this case is that Florida’s judges, not juries, have traditionally made sentencing-related, public danger evaluations like those under § 775.082(10). The Ap-prendi cases are clear that jury rights do not attach to every type of fact-finding that can increase a sentence, nor “to every contemporary state-law ‘entitlement’ to predicate findings.” Ice, 555 U.S. at 170, 129 S.Ct. 711. The Court has extended constitutional protections only to facts that are “elements” or the “functional equiva-lentes] of elements]” of actual criminal offenses. See, e.g., United States v. Booker, 543 U.S. 220, 230, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (recognizing the rights of criminal defendants to demand a jury verdict as to all the elements of the charged crime). It..has excluded from Ap-prendi’s reach sentencing decisions that are outside of the historic ambit of juries. Ice, 555 U.S. at 168-70, 129 S.Ct. 711. See also U.S. v. Bedgood, 569 Fed.Appx. 836, 838 (11th Cir. 2014) (“there is no requirement that sentencing facts be submitted to a jury and found beyond a reasonable doubt”) (quoting United States v. Diaz, 248 F.3d 1065, 1105 (11th Cir. 2001)).
The type of finding required by § 775.082(10) is different from the Appren-di cases because it doesn’t include fact-finding about the defendant’s crime itself, elements of the crime, or the degree of culpability involved with the crime. Ap-prendi, for instance, required the jury to determine if a crime constituted a “hate crime”; in Blakely, the finding involved whether the crime was deliberately cruel; in Booker, the finding involved whether the defendant possessed a certain quantity of drugs; in Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), the finding involved whether the crime was violent and whether the victim was particularly vulnerable; and in Alleyne, the finding involved whether the defendant brandished a firearm. In each of these cases, unlike in this case, a judge could increase the defendant’s sentence based upon findings related to the crime itself.
The public danger finding required by § 775.082(10) involves a different kind of evaluation, which has traditionally been left to judges. It is not a finding about the crime itself, but about what type of jury-authorized penalty a judge should give to a convicted defendant. With § 775.082(10), the Legislature has directed courts presumptively to give a nonprison sanction to certain lower-level offenders, unless those sanctions could present a public danger. Judges evaluate public safety considerations like these at sentencing all the time. Oregon v. Ice counsels us not to apply Apprendi and rather to defer to state laws in which the fact-finding and decision-making of sentencing judges falls within the traditional authority vested in courts instead of juries. Ice, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517. Ice involved an Oregon statute that required courts to impose concurrent sentences for multiple convictions instead of consecutive sentences, but with room for judges to depart upon making certain findings of fact. In Mr. Ice’s case, the trial court made sentence-enhancing findings and then rendered consecutive sentences, substantially increasing his total sentence. The Oregon Supreme Court applied Apprendi and reversed the trial court because its findings had increased the quantum of Mr. Ice’s punishment without involving a jury. But the United States Supreme Court reversed Oregon’s high court. Despite a substantial increase in Mr. Ice’s total sentence, the *818 Supreme Court saw no Sixth Amendment issue with the trial court’s fact-finding and decision to give consecutive sentences. The Court recognized instead that the. power of states to manage their own criminal justice systems included authority to give judges fact-finding leeway to determine the appropriate sentence for each criminal defendant. The Court expressed significant federalism concerns for state sovereignty and allowing states to order their own penal systems, which “lies at the core of their sovereign status.” Id. at 170, 129 S.Ct. 711. The historic dominance and interest of states in their sentencing regimes counseled against extending Apprendi: “It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government.” Id. at 170-71, 129 S.Ct. 711 (citation omitted). See also Williams v. New York, 387 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (“[Bjoth before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.”).
Along with its federalism rationale, Ice allowed for judicial fact-finding because the jury’s historic role wasn’t compromised. The Court said that Apprendi’s scope “must be informed by the historical role of the jury at common law.” Ice, 555 U.S. at 170, 129 S.Ct. 711. And it noted that juries traditionally “played no role in the decision to impose sentences consecutively or concurrently. Rather, the choice rested exclusively with the judge.” Id. at 168, 129 S.Ct. 711. In the same way that juries in Ice weren’t traditionally involved in deciding between concurrent and consecutive sentences, juries in Florida and elsewhere haven’t been tasked with evaluating the relative public danger risks associated with different criminal sentences authorized by the jury’s verdict. This is the customary job of judges. See, e.g., Ice, 555 U.S. at 171, 129 S.Ct. 711 (recognizing that judges .decide, based on circumstances unique to defendants, “the length of supervised release following service of a prison sentence; required attendance at drug rehabilitation programs or terms of community service; and the imposition of statutorily prescribed fines and orders of restitution”); Alleyne, 133 S.Ct. at 2169 (Roberts, C.J., dissenting) (“After rendering the verdict, the jury’s role [is] completed, it [is] discharged, and the judge [begins] the process of determining where within that range to set [the defendant’s] sentence. Everyone agrees that in making that determination, the judge [is] free to consider any relevant facts about the offense and offender, including facts not found by the jury beyond a reasonable doubt.”).
In Ewing v. California, 538 U.S. 11, 29-30, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the Court recognized that sentencing decisions can rest upon public danger considerations. The plurality opinion noted that the defendant’s 25-years-to-life sentence for shoplifting three golf clubs was “justified by the State’s public-safety interest in incapacitating and deterring réeidivist felons.” Id. (emphasis added). “[T]he trial judge justifiably exercised her discretion not to extend such lenient treatment given Ewing’s long criminal history.” Id. at 29, 123 S.Ct. 1179. See also Almendarez-Torres v. United States, 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (holding that prior convictions are not facts that must be found by a jury). Florida is no different. It has long empowered judges to sentence offenders with an eye towards protecting the public. See State v. Parker, 87 Fla. 181, 100 So. 260, 263 (1924) (recog *819 nizing judicial discretion to impose prison sentences “in the interest of public safety” and to sentence offenders differently within legal limits); Eutsey v. State, 388 So.2d 219 (Fla. 1980) (allowing trial courts to increase the sentences of habitual offenders where necessary to protect the public from additional criminal conduct); Ross v. State, 88 So.3d 297, 299 (Fla 1st DCA 2012) (holding that judges may find an escalating pattern of criminal behavior without violating the Sixth Amendment or Blakely), see also § 775.084(3)(c)5., Fla. Stat. (providing that “the court must sentence the defendant as a violent career criminal, subject to imprisonment pursuant to this section unless the court finds that such sentence is not necessary for the protection of the public”) (emphasis added). Section 775.082(10) falls squarely within the tradition of judges making final sentencing decisions with public safety considerations in mind.[9] Because § 775.082(10) involves a sentencing call that has been traditionally left to judges, and Ice emphasizes the states’ important federalism interests in this area, Apprendi doesn’t foreclose the sentences rendered under § 775.082(10).
III.
For these reasons, I would not extend Apprendi to invade the sentencing prerogative of Florida’s judges under § 775.082(10). The Legislature has significant latitude to organize Florida’s criminal justice system in the way that it wants and needn’t remit the traditional sentencing authority of its judges to juries in order to satisfy the Sixth Amendment. How offenders serve their range-bound sentences is not the historic domain of juries. And “[intruding Apprendi’s rule into these decisions on sentencing choices or accoutrements surely would cut the rule loose from its moorings.” Ice, 555 U.S. at 171-72, 129 S.Ct. 711. Whatever sentencing grace flows from the Legislature’s presumptive preference not to fill state prison beds (as opposed to county jail beds or other non-prison programs) with low-level, third-degree felons, it creates no entitlement to a jury when- a judge decides to impose a prison sanction within the five-year maximum authorized by a jury’s verdict (or, in this case, the guilty plea), instead of a nonprison sanction.
ROWE, KELSEY, and M.K. THOMAS, JJ., join.

. Regarding the mootness concern raised by some of my colleagues, I agree with the majority of my colleagues that Ms. Woods’ facial challenge to § 775.082(10) should be decided on the merits and not dismissed as. moot. "[T]he mootness doctrine does not destroy our jurisdiction when the question before us is of great public importance or is likely to recur.” Enterprise Leasing Co. v. Jones, 789 So.2d 964, 965 (Fla. 2001). Here, we have a recurring issue. Multiple defendants have raised Apprendi-Blakely challenges to § 775.082(10) in this court and other courts within the last six years only to have the issue side-stepped and remain unaddressed. See, e.g., Murphy v. State, 161 So.3d 1282, 1284 (Fla. 1st DCA 2015); Murray v. State, 133 So.3d 557, 559 (Fla. 1st DCA 2014); Sprott v. State, 99 So.3d 634, 635 (Fla. 1st DCA 2012); Jones v. State, 71 So.3d 173, 174 (Fla. 1st DCA 2011); see also Casper v. State, 187 So.3d 255, 257 (Fla. 1st DCA 2016) (Makar, J., concurring dubitante) ("Our court, though being presented with the issue, has avoided writing an opinion on it.”). This case raises an important issue. And there have been dozens of appeals citing § 775.082(10) in recent years. If the sentences rendered under this law aren't constitutional, we should say so. This case presents an exceptionally good vehicle for doing so. Our court voted to hear this case en banc and took the extraordinary steps of ordering additional briefing and an argument before the entire court (apparently for the first time in over two decades). Under these circumstances, with the important constitutional claim teed up now for resolution, it would be incorrect to stop short, wash our hands of this appeal, and simply punt this recurring constitutional issue to some future panel (with the looming prospect of a duplica-tive en banc process in some other case very soon).

. I note Judge Makar’s point that the State didn’t defend the statute on the grounds developed in this opinion. But that fact doesn’t preclude us from, affirming on these grounds. First, Florida's "tipsy coachman rule” requires an appellate court, in considering whether to uphold or overturn a lower court’s judgment, to affirm the judgment if it is legally correct, so long as there is any basis for doing so. See Robertson v. State, 829 So.2d 901, 906 (Fla. 2002). We may even affirm in cases "where the State does not file a brief.” Powell v. State, 120 So.3d 577, 592 (Fla. 1st DCA 2013) (Op. on Reh’g). Second, it is not the parties’ job in litigation to decide whether a statute is facially constitutional. Rather, it is the work of the judiciary. See Cashatt v. State, 873 So.2d 430, 434 (Fla. 1st DCA 2004). The State’s limited defense of a statute—or even a full-blown failure to defend such a law—has no bearing on this court’s duty to carefully and diligently decide a duly-presented constitutional issue. "No doubt the political branches have a role in interpreting and applying the Constitution, but ever since Marbury [courts have] remained the ultimate expositor of the constitutional text.” United States v. Morrison, 529 U.S. 598, 616 n.7, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). See also Gregory F. Zoeller, Duty to Defend and the Rule of Law, 90 Ind. L.J. 513, 534 (2015) (criticizing practices that would place "the attorney general in the position of exercising a ‘litigation veto’ over legislation whose constitutionality is open to debate”).

. Different from Apprendi s concern about increased punishments, § 775.082(10) does not authorize Florida's trial courts to give prison sanctions as a means of increasing a punishment. Rather, the statute allows prison sentences only if public safety interests call for that form of sanction. Punishment and public protection are distinctly different goals. See, e.g., Westerheide v. State, 831 So.2d 93 (Fla. 2002) (finding Jimmy Ryce Act-related detention to be nonpunitive due to its public protection goal). See also United States v. Salerno, 481 U.S. 739, 748-50, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (allowing pre-trial detention decisions by judges because governments have compelling public safety interests in preventing additional crimes).